**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**



FILED
JAN 23 2013
CLERK, US DISTRICT COURT
NORFOLK, VA

FIDELITY AND DEPOSIT COMPANY OF MARYLAND,

    Plaintiff,

v.                                                     Civil Action Case No.: 2:13cv35

RAYMOND KEY COMMERCIAL CONTRACTING, L.L.C.,
Serve: Thomas B. Kelly, Registered Agent
       501 Independence Parkway, Suite 201
       Chesapeake, VA 23320

RAYMOND J. KEY, JR.,
       4014 Tanglewood Trail
       Chesapeake, VA 23324-2258

JANICE B. KEY,
       1124 Candlewood Dr.
       Virginia Beach, VA 23464

WOODMASTERS, INC.,
Serve: Raymond J. Key, Registered Agent
       2513 Performance Court, #103
       Virginia Beach, VA 23453

KEY LAND DEVELOPMENT, LLC,
Serve: Clerk of the State Corporation Commission
       P.O. Box 1197
       Richmond, VA 23218-1197

and

DOES 1 THROUGH 25.

    Defendants.

## COMPLAINT

**NOW COMES** Plaintiff Fidelity and Deposit Company of Maryland ("F&D"), by counsel, and for its Complaint against Defendants Raymond Key Commercial Contracting,

1

L.L.C. ("RKCC"), Raymond J. Key, Jr. ("R. Key"), Janice B. Key ("J. Key"), Woodmasters, Inc. ("Woodmasters"), Key Land Development, LLC ("KLD"), and Does 1 through 25 states as follows:

**The Parties:**

1. F&D is a Maryland corporation with its principal office located in Owings Mills, MD. F&D is properly registered to do business in Virginia.

2. RKCC is or was a Virginia limited liability company. RKCC's last known address is 1124 Candlewood Dr., Virginia Beach, VA 23464. RKCC's Registered Agent is Thomas B. Kelly, Esq., 501 Independence Parkway, Suite 201, Chesapeake, VA 23320

3. R. Key is an individual. R. Key's last known principal residence is 4014 Tanglewood Trail, Chesapeake, VA 23325.

4. J. Key is an individual. J. Key's last known principal residence is 1124 Candlewood Dr., Virginia Beach, VA 23464.

5. Woodmasters is or was a Virginia corporation. Woodmasters' last known principal office is 2513 Performance Court, Suite 103, Virginia Beach, VA 23453. Woodmasters' Registered Agent is Raymond J. Key, Jr., whose address as registered with the Virginia State Corporation Commission is 2513 Performance Court, #103, Virginia Beach, VA 23453 and whose last known principal residence is 1124 Candlewood Dr., Virginia Beach, VA 23464.

6. KLD is or was a Virginia limited liability company. KLD's last known principal office is located at 1124 Candlewood Dr., Virginia Beach, VA 23464. No registered agent is known for KLD, which according to the records of the Virginia State Corporation Commission has voluntarily cancelled registration with the Commonwealth.

2

7. Does 1 through 25 are unknown defendants, and include such persons as, *inter alia*, may be, or were responsible for, winding up one or more of the defendant companies or who have or are holding monies or other assets of defendants that are being or should be held for the benefit of plaintiff.

### Jurisdiction, Venue and Right to Relief

8. This Court has personal jurisdiction over all defendants, has subject matter jurisdiction over all claims herein, and is a proper venue respecting the claims herein.

9. Federal court jurisdiction lies, *inter alia*, per 28 U.S.C. § 1332 in that the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states; to-wit: F&D is a Maryland corporation and the defendants are Virginia corporations, companies or residents.

10. All conditions precedent to the filing and maintenance of this action, and to the granting of the relief sought herein, have been met, have been satisfied, have occurred, or have been waived.

### Agreement of Indemnity, Subsequent Project Surety Bonds, and Subsequent Project Surety Bond Claims

11. RKCC is a commercial contractor and has heretofore needed to post surety bonds for construction projects as a condition of obtaining contracts for such projects.

12. In inducement, *inter alia*, for F&D to act as surety for such projects, RKCC, and the other defendants, as indemnitors, executed that certain Agreement of Indemnity dated July 7, 2006, true copy of which is attached hereto as **Exhibit A**.

13. In reliance upon the promises in the Agreement of Indemnity, and other related consideration for the same, F&D subsequently issued various surety bonds for various such construction projects, which included without limitation the following projects:

3

a. The Public Utilities Landstown Yard Improvements project, located in Virginia Beach, VA, identified as PUCN-09-022; CIP Nos. 5-092/6-138 ("Landstown Yard Project");

b. The Lambert's Point Community Center project, located in Norfolk, VA, ("Lambert's Point Community Center Project");

c. The James City Service Authority Operations Center project, located in James City County, VA, identified as Contract 10-3736 ("JCSA Operations Center Project");

d. The Chesterfield County Courts Building Addition project, located in Chesterfield, VA, identified as Project #460080 ("Chesterfield Courts Building Project");

e. The J. Sargeant Reynolds Community College, Parham Road Campus Workforce Training Center project located in Henrico, VA, identified as Commonwealth of Virginia Project Code: 260-16849-000 ("JSRCC Workforce Training Center Project"); and

f. The Franklin Residency Complex for the Virginia Department of Transportation, Project Code: 501-16675-001, located in Franklin, VA ("Franklin Residency Complex Project").

14. RKCC became unable to complete the foregoing projects, and its other business operations, without financial assistance from F&D, and RKCC and the indemnitors (or their agents) requested F&D to provide that financial assistance, which F&D provided.

15. That financial assistance was advanced pursuant to the Agreement of Indemnity, and otherwise at the request of and/or for the benefit of RKCC and the indemnitors.

16. The financial assistance has not been repaid, and it is therefore a presumed loss for which RKCC and the other defendants herein as indemnitors are responsible, pursuant to the Agreement of Indemnity, and otherwise legally and/or equitably.

17. Various subcontractors, and lower tiers to those subcontractors, have made claims against F&D under the payment bonds posted by F&D for the foregoing and/or other various RKCC bonded projects, and are continuing to make such claims.

18. Neither RKCC nor any indemnitor has ever deposited with F&D cash or collateral for purposes of litigating such payment bond claims or demands, or to defend such suits, and thus F&D has had and continues to have the right, to adjust, settle and compromise such payment bond claims.

19. F&D has in fact adjusted, settled and compromised certain of those payment bond claims, and has incurred costs, expenses and attorneys' fees in doing so, and is continuing to incur other costs, expenses and attorneys' fees with respect to other pending payment bond claims; for all of which defendants are jointly and severally liable to F&D, both legally and equitably.

20. Further, various owners, including those set forth above, have made claims against F&D under the performance bonds posted by F&D for RKCC projects, including for work allegedly not completed and project delays, which F&D has been required to address, and is continuing to address.

21. Neither RKCC nor any indemnitor has ever deposited with F&D cash or collateral for purposes of litigating such owner claims or demands, and thus F&D has had and continues to have the right to adjust, settle and compromise such performance bond claims.

22. F&D has in fact incurred costs, expenses and attorneys' fees in addressing those performance bond claims, and is continuing to incur other costs, expenses and attorneys' fees with respect to them; for all of which defendants are jointly and severally liable to F&D, both legally and equitably.

23. Per the Agreement of Indemnity (including the SECOND Article thereof entitled INDEMNITY), and otherwise legally and/or equitably, defendants were and remain liable for exonerating, indemnifying, and keeping F&D indemnified from and against all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, interests, court costs and counsel fees) and from and against any and all losses and/or expenses which F&D may sustain or incur, without limitation: a) by reason of F&D having executed or procured the execution of any bonds; b) by reason of the failures of the defendants to perform or comply with the covenants and conditions of the Agreement of Indemnity; or c) in enforcing any of the covenants and conditions of the Agreement of Indemnity.

24. To date, F&D has already incurred in excess of $5,800,000 in such costs and expenses, and based upon information currently known expects to incur in excess of $260,000 in future additional such costs and expenses, subject to payments, if any, by bond obligees.

25. Notwithstanding, and despite demand, the defendants have not exonerated, indemnified or kept F&D indemnified as so required by the Agreement of Indemnity, and as otherwise is their obligation both legally and equitably.

26. Per the Agreement of Indemnity (including the THIRD Article thereof entitled ASSIGNMENT), defendants assigned, transferred and set over to F&D, as collateral, to secure their obligations to F&D, without limitation, all rights in or resulting from bonded contracts, or in or resulting from project bonds, including associated project documents and things, and all sums due or that may become due. F&D's subsequent demands respecting said collateral have gone unheeded by the defendants.

27. Per the Agreement of Indemnity (including the FOURTH Article thereof entitled TRUST FUND), defendants covenanted and agreed that all payments received for or on account

of bonded contracts were required to be held by them in trust for the payment of obligations incurred in or relating to the performance of bonded contracts, and for the benefit of F&D for any liability or loss F&D may have or sustain under any project bonds. The defendants have subsequently misappropriated said trust funds and materially breached their associated trust obligations.

28. Per the Agreement of Indemnity (including the NINTH Article entitled BOOKS AND RECORDS), F&D has had and continues to have the right of access of the books, records and accounts of the defendants. Despite demand, the defendants have not provided such full and complete access; have intermittently denied and refused to provide any such access; and have previously threatened to destroy such books, records and accounts. Computer access to F&D or its consultants has been shut off, and the current status of such books and records is unknown.

29. Per the Agreement of Indemnity (including the EIGHTEENTH Article entitled ATTORNEY IN FACT), the defendants nominated, constituted, appointed and designated F&D as their attorney-in-fact with the right, but not the obligation, to exercise all of the rights the defendants transferred and set over to F&D in the Agreement of Indemnity, and with the right in the name of the defendants to make, execute, and deliver any and all additional or other assignments, documents or papers deemed necessary and proper by F&D in order to give full effect to the intents and meanings of the assignments within said agreement, and to also give full protection as intended to be given to F&D under all provisions of said agreement.

30. No defendant has terminated the Agreement of Indemnity.

### COUNT 1 - EXONERATION

31. F&D incorporates each of the foregoing paragraphs by reference as if set forth fully herein.

32. As set forth above, demands have been made against F&D because of the project bonds. Those demands include both payment and performance bond claims for bonded projects.

33. Under the express terms of the Agreement of Indemnity, and otherwise legally and/or equitably, the defendants have been and remain obligated to exonerate F&D respecting such demands, but have failed and refused to do so.

34. Accordingly, defendants are obligated to exonerate F&D by reason of and with respect to such claims and demands against F&D, the amount of which is at least the anticipated costs and expenses as set forth above, or such other amount as actually incurred hereafter.

## COUNT 2 – *QUIA TIMET*

35. F&D incorporates each of the foregoing paragraphs by reference as if set forth fully herein.

36. By reason of the foregoing, F&D has reasonable grounds for fearing that its rights have been and are being jeopardized by reason of, *inter alia*: a) multiple and substantial potential losses by or respecting claimants that have already been made and are likely to hereafter be made against the project bonds; b) the diversion of contract proceeds by the defendants; c) the use project monies and/or assets for other than F&D's benefit; and d) the defendants' failure, and purported inability, to post collateral for probable bond liability.

37. Therefore, whether associated project bond obligations have matured or not, F&D is entitled to remedy *quia timet*, including without limitation: a) protection of bonded project contract funds to prevent their dissipation and to otherwise preserve them for use by F&D; and b) the obtaining and preserving of collateral from the defendants to secure anticipated bond liabilities, including the transfer of all assets of the defendants not subject to legal exemption over to F&D.

## COUNT 3 – INDEMNITY

38. F&D incorporates each of the foregoing paragraphs by reference as if set forth fully herein.

39. As set forth above, F&D has already incurred losses and/or expenses because of the project bonds and the defendants' breaches of their obligations under the Agreement of Indemnity, and will continue to incur such losses and/or expenses.

40. Despite demand, and obligation (both legally and equitably), the defendants have failed and refused to indemnify F&D for those losses and/or expenses, and have further informed F&D that they are unable to do so.

41. Accordingly, both legally and equitably, defendants are obligated to indemnify F&D by reason of and with respect to such losses and/or expenses as heretofore and hereafter incurred by F&D, including without limitation the amount of the losses and/or expenses as set forth above, or such other amount as actually incurred hereafter.

## COUNT 4 – ENFORCEMENT OF ASSIGNMENTS

42. F&D incorporates each of the foregoing paragraphs by reference as if set forth fully herein.

43. The conditions of the assignment to F&D of the rights of the defendants respecting bonded project funds and things as set forth, *inter alia,* in the THIRD Article of the Agreement of Indemnity have occurred, including without limitation the defendants' breaches of and/or defaults respecting the contracts for the bonded projects, breaches of the Agreement of Indemnity, defalcation of bonded project funds, and other facts, including those set forth elsewhere in this complaint.

44. By reason thereof, both legally and equitably, F&D is entitled to: a) immediate assignment(s) of and to all such funds and things; b) immediate enforcement of said assignment(s), including without limitation immediate right to possession and/or control over and of all funds and things so assigned; c) the imposition of a constructive trust upon all funds and things in the possession and control of defendants, or any of them, subject to said assignment(s); and d) a full and complete accounting by defendants of all funds and things subject to said assignment(s).

### COUNT 5- DETINUE

45. F&D incorporates each of the foregoing paragraphs by reference as if set forth fully herein.

46. By reason of the foregoing, F&D has rights of possession to and respecting all bonded project funds, to the defendants' books and records, to all other funds and things whatsoever pledged, assigned or otherwise agreed to have been provided or made available to F&D under the Agreement of Indemnity, or otherwise by operation of law or application of equitable principles, wherever such funds and things are located.

47. F&D's aforesaid rights are greater than any other person, including the defendants, and F&D is thus entitled to the immediate possession of all such funds and things, but despite demand, the defendants have wrongfully refused and failed to give them to F&D, and on multiple occasions R. Key has threatened to destroy such funds and things.

48. Without the bonded project funds and things, and other things to which F&D is entitled to immediate possession as set forth above, F&D is severely prejudiced in its efforts to evaluate and address project claims, to resolve project performance issues, to otherwise meet

obligations under its project bonds, and to otherwise protect its rights under the Agreement of Indemnity.

49. Accordingly, both legally and equitably, F&D should be given immediate possession as set forth above of the bonded project funds and things, and other things to which F&D is entitled to possession as set forth above.

### COUNT 6 – DEFALCATION AND BREACH OF FIDUCIARY DUTIES

50. F&D incorporates each of the foregoing paragraphs by reference as if set forth fully herein.

51. Despite their fiduciary obligations owed to F&D by reason of the foregoing, and further otherwise equitably, R. Key and J. Key removed bonded project funds from RKCC and have withheld them from F&D, despite demand by F&D for R. Key and J. Key and/or RKCC to provide those funds to F&D.

52. Upon information and belief, RKCC, J. Key and/or R. Key have taken in excess of $700,000 in bonded project funds, some or all of which was deposited by them in accounts with SunTrust Bank and Wells Fargo Bank, or other RKCC or individual account to them, including upon information and belief the trust account of counsel for J. Key, W. Greer McCreedy, II, Esquire.

53. Despite previously informing F&D that those monies were being held by them for F&D's benefit, neither J. Key nor R. Key have provide updated status respecting all of those funds, or otherwise fully account for them to F&D; and R. Key has further informed F&D that he has used the funds for purposes that have not been approved by F&D, and at one point threatened to withdraw and burn such remaining funds.

54. F&D has been severely prejudiced by the wrongful taking of the bonded project funds, including because those funds have not been available, and remain unavailable for use by F&D, including to satisfy claims against and respecting the project bonds, or other costs incurred by F&D because of the failure of RKCC or the indemnitors to meet their obligations under the Agreement of Indemnity.

55. Accordingly, all such bonded project funds should be ordered preserved, and those funds, to the extent not already defalcated, should immediately be made available to F&D for F&D's use with respect to obligations that have or may hereafter arise by reason of the Agreement of Indemnity, and all documents and records relating to the taking, usage and otherwise respecting said funds should be made immediately available to F&D.

## COUNT 7 – ACCOUNTING

56. F&D incorporates each of the foregoing paragraphs by reference as if set forth fully herein.

57. Despite obligation under the Agreement of Indemnity, the defendants have failed and refused to account for bonded project monies received and/or other monies and things owed, pledged, assigned or otherwise due to F&D.

58. Moreover, the facts are such that defendants should be required under other legal and/or equitable principles to provide full and complete accounting of such monies and things to F&D.

59. By reason of the foregoing, the Court should order a full and complete accounting of and respecting all bonded-project related transactions, and of and respecting all financial accounts of the defendants, and should further order F&D be given full and complete access of the defendants' books and records for purposes of the same.

## COUNT 8 – FUNDS TRUST

60. F&D incorporates each of the foregoing paragraphs by reference as if set forth fully herein.

61. As set forth above, RKCC, R. Key and J. Key, as well as possibly other defendants, including the Does defendants, have received monies due to F&D and/or required by them to be held as trust funds.

62. Said defendants have wrongfully retained those monies for their own benefit(s) and use(s), and otherwise have unjustly retained those monies, which funds are for the benefit of others, including F&D and bond claimants.

63. Retention of said funds by the defendants would be contrary to the Agreement of Indemnity, and otherwise contrary to the principles of equity and would result in unjust enrichment to the defendants.

64. Accordingly, the Court should order: a) the immediate preservation of such funds; b) application of a trust, constructively or otherwise, respecting said funds; c) that an accounting be had with respect to said funds; and d) that the funds be turned over / paid to F&D.

## COUNT 9 – *QUANTUM MERUIT*/UNJUST ENRICHMENT

65. F&D incorporates each of the foregoing paragraphs by reference as if set forth fully herein.

66. RKCC, J. Key and R. Key, and the other defendants to the extent they have received bonded project funds, have been unjustly enriched and have otherwise received advantages and benefits as set forth above.

67. Accordingly, even in the event that an express contract or obligation is not proven between them and F&D, with regard to any element or aspect of F&D's claims herein, then an

implied contract should be equitably implied or applied by the Court, and the value of monies so wrongfully enriched should be disgorged from defendants and awarded to F&D, *quantum meruit*.

### COUNT 10 – INJUNCTIVE RELIEF

68. F&D incorporates each of the foregoing paragraphs by reference as if set forth fully herein.

69. Because, *inter alia*, of the defendants' defalcations, failures to account for bonded project related monies and things, and failures to provide F&D with access to defendants' books and records, and further because, *inter alia*, of defendants' threats to destroy monies and things, F&D has been and will continue to be irreparably harmed and prejudiced in its abilities to determine pertinent facts respecting bonded project facts, its abilities to defend against claims by others, its abilities to assert claims on its own behalf against obligees and against the defendants, and its abilities to otherwise protect itself or the *res* of funds that would otherwise be available.

70. RKCC, J. Key and R. Key, and the other defendants to the extent they participated with respect to the same or the same was done for their benefit, have removed property and things belonging to F&D, or otherwise with intention of not making them available to F&D, including specifically threats to withdraw and destroy funds and to also destroy books and records.

71. The aforesaid irreparable harm and prejudice of F&D significantly outweighs any arguable harm to any other person, including any of the defendants, if the *status quo* were maintained, and F&D is likely to succeed on the merits of its related claims against the defendants herein, and does not have an adequate remedy at law to fully protect it in that once destroyed, those monies, books and records cannot be replaced and the resulting harm to F&D cannot be fairly monetized.

72. It is therefore necessary and proper, and in the best interest of the public, which has an interest herein by reason, among others, of the relationship to the underlying public construction projects, for the Court to preserve the *status quo* as regards these matters by temporarily and permanently enjoining the defendants, either collectively or independently, from and as follows:

    a. That no bonded project funds be dissipated, destroyed, removed, converted, reduced, or otherwise disposed of or used in any way or manner by any defendant without express written approval by F&D, and that said funds shall be expressly preserved and protected;

    b. That no books or records of defendants be destroyed, removed, damaged, or otherwise disposed of or used in any way or manner by an defendant without express written approval by F&D, and that said books and records shall be expressly preserved and protected;

    c. That the defendants not dissipate, destroy, remove, convert, reduce or otherwise dispose of or use any assets or funds, and that said assets and funds be expressly preserved and protected; and

    d. That the defendants be ordered to immediately make available and turn over to F&D for F&D's use, all such monies, books and records, assets and funds, and other things.

## COUNT 11 – PRETRIAL LEVY / SEIZURE OF ATTACHMENT

73. F&D incorporates each of the foregoing paragraphs by reference as if set forth fully herein.

74. Because, *inter alia*, of the defendants' defalcation, failures to account for bonded project related monies and things, and failures to provide F&D with access to defendants' books

and records, and further because, *inter alia*, of defendants' threats to destroy monies and things, F&D has been and will continue to be prejudiced in its abilities to determine pertinent facts respecting bonded projects, its abilities to defend against claims by others, its abilities to assert claims on its own behalf against obligees and against the defendants, and its abilities to otherwise protect itself or the *res* of funds that would otherwise be available.

75. RKCC, J. Key and R. Key, and other defendants to the extent they participated with respect to the same, or the same was done for their benefit, have removed property and things belonging to F&D, or otherwise with intention of not making them available to F&D, including specifically threats to withdraw and destroy funds and to also destroy books and records.

76. Furthermore, F&D has been advised that defendants have or are using property or things that belong to F&D, or otherwise with the intention of not making them available to F&D, or having that result, including personal assets that have been sold or gifted to others and the monies not given to and/or diverted from F&D, such as personal jewelry.

77. F&D has further been advised that a significant tax refund, understood to be in access of $300,000, is being claimed by J. Key and R. Key, or other defendants, from the Internal Revenue Service, and potentially payable to them. F&D will be unfairly damaged if said defendants are allowed to receive those funds and they are not preserved.

78. It is appropriate therefore that the Court order pretrial levy, seizure, and/or attachment of all bonded project funds, books and records, and collateral otherwise as held by or for any of the defendants herein, including all past, pending or future tax refunds, and that the same be immediately made available, and turned over, to F&D for F&D's use, or alternatively order entered preserving the same.

**WHEREFORE**, F&D, by counsel, prays it be awarded judgment and the other relief as set forth hereinabove, or in such other way, amount or manner as proven at trial herein, and that they be further awarded interest (pre and post-judgment) on all sums awarded, and that they be awarded their costs and attorney's fees incurred herein and otherwise with respect to these matters, and that they be awarded such other and further relief as the court / fact finder deems equitable and/or otherwise warranted.

FIDELITY AND DEPOSIT COMPANY OF MARYLAND

By: _[signature]_
Of Counsel

Neil S. Lowenstein (VSB #29845)
Email: nlowenstein@vanblk.com

Michael P. Giordano (VSB #82139)
Email: mgiordano@vanblk.com

VANDEVENTER BLACK LLP
101 W. Main St., Suite 500
500 World Trade Center
Norfolk, Virginia 23510
T: (757) 446-8600 / F: (757) 446-8670
4849-4185-2945, v. 2